(No. 57538.—

THE STREAMS SPORTS CLUB, LTD., Appellee, v. DONNA RICHMOND *et al.*, Appellants.

*Opinion filed December 16, 1983.*

McKenna, Storer, Rowe, White & Farrug, of Wheaton (John C. Bartler, Michael F. Dahlen, and William J. Cremer, of counsel), for appellants.

Thomas B. Cassidy and Cathleen M. Keating, of Martin, Craig, Chester & Sonnenschein, of Chicago, for appellee.

JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Streams Sports Club, Ltd., brought an action against condominium owner Donna Richmond (hereafter referred to as defendant) and others believed to have some interest in the condominium unit owned by defendant. A breach of contract was asserted, as well as a right to foreclose on a lien that plaintiff claimed arose because defendant refused to pay annual dues to the sports club. In the amended complaint, count I sought foreclosure pursuant to the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat. 1979, ch. 95, par. 23); count II sought for foreclosure pursuant to article 15 of the condominium declaration; and count III alleged a breach of contract. The circuit court of Du Page County granted defendant's motion to dismiss, and plaintiff appealed on

counts II and III. The appellate court reversed the trial court's decision with respect to count II and count III (109 Ill. App. 3d 689), and we granted leave to appeal (87 Ill. 2d R. 315(a)).

Four issues are presented upon appeal: (1) Is the club's lien valid and enforceable? (2) Are the terms of the contract between the club and unit owners valid and enforceable? (3) Is the attempted amendment to the contract enforceable? (4) Is the amendment, if enforceable, invalid for failure to comply with the requirements set forth in the condominium declarations?

This is a case of first impression before this court, and arises from the increasingly common method of property ownership, the condominium unit. In the case at bar, the Streams Sports Club, Ltd., is a successor in interest to Shannon, Inc., the developer of a condominium complex in Wheaton. The Streams Sports Club owns and operates recreational facilities adjacent to the condominium complex. The original declaration of condominium ownership was filed in the Du Page County recorder of deeds office on July 5, 1973. The condominium declaration provides, in pertinent part:

"Article 15
Streams Sports Club

15.1 *Club Facilities.* The Developer intends to form or has already formed a sports club to be located west of this Condominium. This club will be owned by the Developer and operated for profit by the Developer, its assignees, vendees or designees. The intended facilities of such Club may include a club house, food and beverage service, a swimming pool, tennis courts, a private lake landscaped and developed for fishing, boating and other recreational facilities. The nature of any such intended facilities, improvement or development of such Club and the authority to determine whether any facility or service of such Club shall be continued, altered, changed or terminated are hereby in all respects fully reserved to the title holder, owner and operator of such Club.

15.2 *Membership in Club.* Each Owner of any Unit in the entire Condominium Development shall, upon acquisition of title, by such Owner, become a member of the Club, without any membership or initiation fee therefor. Each such Owner may exercise and enjoy any and all facilities of such Club as may exist from time to time, expressly subject and contingent upon the continuous compliance by each such Owner with all By-Laws, rules and regulations as the Owner of said Club may adopt from time to time, and the payment of any annual membership fees and such other fees occasioned solely by the use of the facilities of the Club by such Unit member, as may be imposed, in amounts deemed reasonable by such Owner and applicable, generally, to the entire membership for any particular facility or service.

15.3 *Termination of Membership or Privileges.*

\*\*\*

All unpaid charges shall be a lien against said Unit, subject, however, to rights of any mortgages on said Unit. The Club shall have the right, in addition to any other remedy, to enforce its lien by foreclosure, and there shall be added to the amount due the costs of suit, fees, expenses, interest at the rate of eight per cent (8%) per annum and reasonable attorneys fees.

\*\*\*

ARTICLE 17

Amendments

17.1 *Amendments.* The provisions of this Declaration may be changed, modified or rescinded by an instrument in writing setting forth such change, modification or rescission, signed by Owners having at least three-fourths (3/4) of the total vote, and certified by the secretary of the Board, provided, however, that all lien holders of record have been notified either by personal service or mailing by certified mail of such change, modification or rescission and an affidavit by said secretary certifying to same is a part of such instrument.

Notwithstanding the provisions of the foregoing paragraph, if the Act, or this Declaration, or the By-Laws, requires the consent or agreement of all Owners or of all lien holders for any action specified in the Act or in this

Declaration, then any instrument changing, modifying or rescinding any provision of this Declaration with respect to such action, shall be signed by all the Owners or all the lien holders or both as required by the Act or this Declaration.

17.2 *Notice of Amendment.* The change, modification or rescission, whether accomplished under either of the provisions of the preceding two paragraphs, shall be effective upon recordation of such instrument in the office of the Recorder of Deeds of DuPage County, Illinois, provided, however, that no provisions in this Declaration may be changed, modified or rescinded so as to conflict with the provisions of the Condominium Property Act."

On January 18, 1978, owners of condominium units in the Streams complex recorded an attempted amendment to article 15.2 of the condominium declaration. The amendment attempted to make membership in the sports club voluntary instead of compulsory. However, the record on appeal is devoid of proof that the amendment passed by the necessary three-fourths of the unit owners, whether it was certified by the secretary of the board, or whether all unit owners were notified of the proposed vote. The appellate court held that additional proof was necessary to determine the validity of the amendment and remanded the case to the circuit court. 109 Ill. App. 3d 689, 696.

Defendant Donna Richmond is the beneficial owner of a condominium unit in this complex. Richmond purchased her condominium in February of 1978, and has resided there since that time. Richmond, along with other owners of condominium units, was assessed $216 per year for membership in the sports club. Her total debt on October 1, 1980, was $342.50, and the sports club filed suit on April 10, 1981.

We turn now to the first issue, whether the lien is valid and enforceable. Plaintiff argues that the covenant to pay annual dues to the sports club is a covenant running with the land, while defendant maintains that it is a personal covenant. Defendant further argues that since the Streams

Sports Club is a successor in interest of Shannon, Inc., the original developer, the covenant is no longer binding on the unit owners. A covenant to pay fees, giving plaintiff a lien on property for unpaid fees, runs with the land. In *Mathis v. Mathis* (1948), 402 Ill. 60, 66, this court stated that "[w]here land is conveyed in consideration of a covenant by the grantee to support the grantor, or other persons designated, the covenant runs with the land and is binding upon subsequent owners." In order for a covenant to run with the land, in the State of New York, three criteria must be met: (1) The grantor and grantee must have intended the covenant to run with the land; (2) the covenant must touch and concern the land; (3) there must be privity of estate between the party claiming the benefit of the covenant and the party resting under the burden of the covenant. *Neponsit Property Owners' Association, Inc. v. Emigrant Industrial Savings Bank* (1938), 278 N.Y. 248, 255, 15 N.E.2d 793, 795.

In the case at bar, there is no doubt that the grantor and grantee intended the covenant to run with the land. Covenants should be interpreted to give effect to the actual intent of the parties at the time the covenant was made. (*Kessler v. Palmeri* (1972), 3 Ill. App. 3d 901, 904.) The intent of the parties can best be determined by express contractual provisions. *Guhl v. Guhl* (1941), 376 Ill. 100, 110.

The declarations that preceded the specific provisions in the contract between the plaintiff and defendant provide, in pertinent part:

> "Each grantee of Declarants by the acceptance of a Deed of Conveyance, and each purchaser under any contract for such deed or conveyance, accepts the same subject to all restrictions, conditions, covenants, reservations, liens and charges, and the jurisdiction, rights, and powers created or reserved by this Declaration, and all rights, benefits and privileges of every character hereby granted *** and all impositions and obligations hereby imposed shall

be deemed and taken to be covenants running with the land, and shall bind any person having at any time any interest or estate in said land, and shall inure to the benefit of such person in like manner as though the provisions of this Declaration were recited and stipulated at length in each and every Deed of Conveyance."

We therefore conclude that the parties intended specific contractual provisions to run with the land.

The second requirement for a covenant running with the land is also met, because the covenant clearly touches and concerns the land. The recreational facility that is the subject of this lawsuit is adjacent to the condominium units and is used by the residents of the condominiums. The sports club is part of a common building plan that the defendant was aware of at the time she purchased her unit. Condominium owners can enjoy the benefits of convenient sports facilities and also have the burden of furnishing the $216 annual fee.

Nearly every jurisdiction that has reviewed the question of assessments for condominium recreational facilities has held them to be binding covenants running with the land. (See, *e.g., Bessemer v. Gersten* (Fla. 1980), 381 So. 2d 1344; *Lincolnshire Civic Association, Inc. v. Beach* (1975), 46 App. Div. 2d 596, 364 N.Y.S.2d 248; *Boyle v. Lake Forest Property Owners Association, Inc.* (S.D. Ala. 1982), 538 F. Supp. 765; *Rodruck v. Sand Point Maintenance Com.* (1956), 48 Wash. 2d 565, 295 P.2d 714; *Kell v. Bella Vista Village Property Owners Association* (1975), 258 Ark. 757, 528 S.W.2d 651; *Birchwood Lakes Community Association, Inc. v. Comis* (1982), 296 Pa. Super. 77, 442 A.2d 304; *Phillips v. Smith* (1949), 240 Iowa 863, 38 N.W.2d 87.) Defendant has attempted to distinguish such authority on the grounds that the associations that levy assessments for recreational facilities were nonprofit entities. Defendant has provided no authority indicating recreational facilities that earn a profit should be treated differently than nonprofit associations. Finally, defendant has

not alleged that the assessments have been excessive or that the facilities have not been commensurate with the annual fees.

Our research has detected only one decision with sufficient factual similarity to justify defendant's position on appeal. In *Raintree Corp. v. Rowe* (1978), 38 N.C. App. 664, 248 S.E.2d 904, the court held that a covenant to pay country club dues was a personal covenant and did not meet the common law test for a covenant running with the land. Defendant relies heavily on *Raintree* because of its alleged factual similarity to the case at bar. Although *Raintree* has not been reversed, it has been distinguished to the point where it has virtually no precedential value to the case at bar. In *Four Seasons Homeowners Association, Inc. v. Sellers* (1983), 62 N.C. App. 205, 302 S.E.2d 848, the court held that a covenant to pay monthly assessments for recreational facilities in a subdivision was enforceable. The court noted:

> "The covenant, however, runs with each lot in the entire subdivision of which defendants' lots are but a small part. The recreational facilities are in the subdivision, for the use of all the people who live in the subdivision. It does not matter that the facilities are not adjacent to each lot, it is sufficient that they touch and concern the entire subdivision. Defendants argue that *Raintree* supports their contention that the facilities do not touch and concern the land. Their reliance on *Raintree* to support their argument is misplaced. *** This case is easily distinguishable from *Raintree* because the recreation facilities here are not in a country club, but are actually on the Four Seasons subdivision for the benefit of the lot owners." 62 N.C. App. 205, 211, 302 S.E.2d 848, 852-53.

Thus, *Raintree* was limited to the specific facts raised in that case and did not disturb the general principle that a covenant to pay recreational-facility dues touches and concerns the land.

The covenant meets the third part of the *Neponsit* test. Richmond is obviously in privity of estate with the owners

of the condominium because she has resided in the condominium complex since 1978. (See *Anthony v. Brea Glenbrook Club* (1976), 58 Cal. App. 3d 506, 130 Cal. Rptr. 32.) We therefore conclude that the covenant is not a personal covenant but a covenant running with the land, and its terms are binding on defendant Richmond.

Defendant's contention that the covenant is an unlawful restriction on alienation of property is without merit. The imposition of a lien for unpaid fees is a reasonable method of enforcing the terms of the covenant. The description of the sports club and the relevant fees were set out in the articles of the condominium declaration giving prospective purchasers adequate notice of their contractual obligations. Defendant's argument that the sports club is no more useful to condominium residents than a grocery store is also without merit. We must confine our analysis to the express terms of the contract and not engage in conjecture as to what might be beneficial to unit holders if it had been included in the articles of the condominium declaration.

We now turn to the second issue, whether the terms of the contract are enforceable. Richmond maintains that the contract was unconscionable, vague and lacking in mutuality. A contract is unconscionable when it is improvident, oppressive, or totally one-sided (*Walter E. Heller & Co. v. Convalescent Home* (1977), 49 Ill. App. 3d 213, 219), but mere disparity of bargaining power is not sufficient grounds to vitiate contractual obligations (see *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 419; see also Fort, *Understanding Unconscionability: Defining the Principle*, 9 Loy. U. Chi. L.J. 765 (1978)). We conclude that the condominium declaration, considered as a whole, is not so one-sided or unfair as to render it unconscionable.

Defendant's contention that the contract is vague is also without merit. The condominium declaration is extremely specific and is not at variance with industry cus-

tom. (See R. Kratovil, Real Estate Law secs. 547 to 571 (6th ed. 1978).) The failure to specifically articulate each service which may be provided by the sports club is consistent with the flexibility necessary in the purpose clause of the condominium declaration. The club will be able to modify its services to meet unforeseen circumstances in the future.

We agree with the appellate court's finding that the contract is not lacking in mutuality. Article 15.4 of the condominium declaration states that the annual dues will be $216 and that subsequent increases must be tied to the consumer price index. Richmond has not argued that the club's facilities are not commensurate with the income received by annual assessment. The Washington Supreme Court has noted:

> "Members may attack assessments deemed to be unreasonable and the result of an abuse of discretion, but the plan of operation does not fail in its entirety merely because such discretion has been vested in the commission." *Rodruck v. Sand Point Maintenance Com.* (1956), 48 Wash. 2d 565, 577, 295 P.2d 714, 721.

Since we believe that the sports club can enforce its lien for unpaid dues as a covenant running with the land, we need not reach the alternative theory of whether the club can enforce its lien as a third-party beneficiary to the contract. Similarly, we cannot resolve the final two issues raised in this appeal without additional data. As stated previously plaintiff further contends that the 1978 amendment fails to comply with the provisions of article 17, which provides that the amendment must be signed by three-fourths of the condominium owners, certified by the secretary of the board, and all lienholders of record must have been notified. Plaintiff claims that none of these three requirements have been met. As the appellate court stated, "No evidence was taken to determine whether the amendment was passed by three-fourths of the unit owners. A certification by the secretary of the board would have substanti-

ated this fact, but no certification is attached to the amendment. Also, there is no indication that all lienholders of record were notified. It would appear that the amendment would be valid and defeat the cause of action under any count if passed in accordance with the requirements." (109 Ill. App. 3d 689, 696.) The record on appeal lacks sufficient proof that the attempted amendment to the condominium declaration was indeed properly made prior to Richmond's purchase of her condominium. It appears that a valid amendment would defeat the club's cause of action on all counts, but the record needs to be supplemented by the circuit court in order to accurately resolve this question. We therefore conclude that the appellate court properly remanded the case to the circuit court.

For the reasons stated herein, the judgment of the appellate court is affirmed.

*Judgment affirmed.*