C-B REALTY AND TRADING CORPORATION *et al.*, Plaintiffs-Appellees, v. CHICAGO AND NORTH WESTERN RAILWAY COMPANY *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—88—2423

Opinion filed May 11, 1990.

James P. Daley, George H. Brant, and Myles L. Tobin, all of Chicago, for appellants.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Algimantas Kezelis and Russell P. Veldenz, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

In 1974, plaintiffs C-B Realty & Trading Corporation, Harris Trust & Savings Bank, as trustee under trust agreement dated July 25, 1975, Julius Braun, Morris Braun, Eve Braun Erenberg, and the estate of Marie Braun, joint venturers under the title of C-B Realty Joint Venture, sued defendants Chicago and North Western Railway Company and Chicago and North Western Transportation Company, for breach of two covenants in a 1908 contract pertaining to the payment of certain taxes and the maintenance of a railroad bridge.

In 1980, the trial court entered partial summary judgment in favor of plaintiffs by ruling that the two covenants ran with the land and that plaintiffs were entitled to enjoy the benefits conferred by the covenants.

In 1988, following a trial without a jury, concerning only damages and not liability, the court awarded plaintiffs $541,422.92, the full amount sought.

Defendant Chicago and North Western Transportation Company, as successor in interest to the Chicago and North Western Railway Company, appeals. It contends that the trial court erred in entering partial summary judgment in favor of plaintiffs, and asks that we

reverse that order and enter judgment in its favor, or reverse and remand for a new trial. It also contends that at trial, the court erred in limiting the evidence to issues of damages and prohibiting defendant from addressing the question of liability and introducing evidence on the affirmative defenses of waiver, *laches* and the statute of limitations. Defendant also contends that the court's award of damages for taxes, lost profits and costs of repairs and restoration of property was contrary to law and against the manifest weight of the evidence and that the court erred in awarding prejudgment interest on the tax award.

The somewhat complex chronology and factual setting is as follows. Defendant operates an elevated commuter service to a passenger depot in Chicago. Just north of the passenger station is a railroad bridge which passes over a portion of a former railroad freight warehouse. The warehouse extends in a semicircular manner eastward under the bridge, and then curves southward.

In 1908, defendant's predecessor in interest entered into a contract with the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company, relating to the construction of that railroad bridge and the transfer of rights in certain property in Chicago.

In 1959, plaintiffs acquired title to the land upon which the freight warehouse rests, along with some adjoining property, as the successor to the interests of the Pittsburgh Company.

On September 20, 1974, plaintiffs filed this suit. Count I was withdrawn. Count II sought a judgment declaring that defendant was obligated to pay three-fourths of plaintiffs' taxes. The 1908 contract stated in paragraph 9 that defendant would pay three-fourths of taxes levied on the land now owned by plaintiffs:

> "9. The North-Western Company [now defendant] will pay all taxes and assessments which may be levied against said overhead bridge or structure, and will also pay three-fourths of all taxes and assessments which may be levied against the tract of land owned by the Pittsburgh Company [now plaintiff], across which the said overhead structure is located."

Count III of the complaint alleged that defendant had failed to maintain a watertight floor on its bridge and sought compensation for damage to the freight warehouse. The 1908 contract stated in paragraph 3 that defendant would maintain the bridge with a watertight floor over the freight house:

> "3. The North-Western Company [now defendant] will construct, maintain and renew at all times the said bridge or structure so that the same shall have a water-tight floor con-

struction over the entire area of the tracks and property of the Pittsburgh Company, and the North-Western Company at its own sole cost and expense, will reconstruct and rearrange the freight house of the Pittsburgh Company [now plaintiff] in accordance with said Exhibit A and under the direction of Chief Engineer of the Pittsburgh Company."

Cross-motions for summary judgment were filed on the issue of whether paragraphs 3 and 9 were covenants running with the land. On December 19, 1980, Judge Murray entered an order in favor of plaintiffs, finding paragraphs 3 and 9 created covenants running with the land. The judge explained that the two paragraphs involved the enjoyment of the land, and such benefits and obligations passed with the ownership. On January 14, 1981, the judge modified the December 19 order by finding it was not final and appealable because other issues had yet to be decided.

On October 28, 1985, trial commenced before Judge Mackoff. The court limited the issues to plaintiffs' damages after finding that the December 19, 1980, entry of partial summary judgment determined all issues of liability. Following trial, by orders dated April 15 and July 6, 1988, Judge Mackoff entered judgment awarding plaintiffs the sum of $541,422.92.

We first address the issue of whether the covenants regarding defendant's duty to pay taxes and maintain a watertight bridge ran with the land. Defendant contends that the trial court erred in granting partial summary judgment in favor of plaintiffs because genuine issues of material fact existed, and because the contract did not establish as a matter of law that the 1908 covenants ran with the land.

■■ A covenant runs with the land when the covenant concerns the thing granted and the occupation or enjoyment of it. (*Atwood v. Chicago, Milwaukee & St. Paul Ry. Co.* (1924), 313 Ill. 59, 64, 144 N.E.2d 351; *Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 505, 378 N.E.2d 243.) A covenant is personal, and therefore does not run with the land, where it is collateral and personal and not immediately concerning the thing granted. (*Atwood v. Chicago, Milwaukee & St. Paul Ry. Co.*, 313 Ill. 59, 144 N.E.2d 351; *Parrish v. City of Carbondale*, 61 Ill. App. 3d 500, 378 N.E.2d 243.) Thus, every successive assignee of the land is entitled to enforce the covenant, and entitled to the benefits or obligations passing with the covenant, if the act to be done or permitted concerns the land or the estate conveyed. *Atwood v. Chicago, Milwaukee & St. Paul Ry. Co.*, 313 Ill. 59, 144 N.E.2d 351; *Parrish v. City of Carbondale*, 61

Ill. App. 3d 500, 378 N.E.2d 243.

■ The facts show that defendant owns an easement across plaintiffs' property. Defendant's predecessor was permitted to construct a bridge over the property. The contract states that defendant's predecessor may "construct, maintain and renew perpetually an overhead bridge or structure" above the property owned by plaintiffs' predecessor, and may "operate its railroad upon said bridge." Defendant's predecessor promised to "construct, maintain and renew at all times the said bridge or structure so· that the same shall have a water-tight floor construction over the entire area of the tracks and property [of plaintiffs' predecessor] at its own sole cost and expense." The right to that easement passed to defendant. The burden of that easement passed to plaintiffs. See *Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 1039, 482 N.E.2d 682.

■ We hold that Judge Murray properly found, as a matter of law, that the covenant to maintain a watertight bridge was a covenant running with the land. (See *Sanitary District of Chicago v. Martin* (1906), 129 Ill. App. 308, 314, *aff'd* (1907), 227 Ill. 260, 81 N.E. 417 (covenant to erect and maintain levee and ditches runs with the land); *Dorsey v. St. Louis, Alton & Terre Haute R.R. Co.* (1871), 58 Ill. 65 (covenant to maintain fence in good repair runs with the land); *Batavia Manufacturing Co. v. Newton Wagon Co.* (1878), 91 Ill. 230 (covenant to keep dam in repair runs with the land); *Fitch v. Johnson* (1882), 104 Ill. 111 (covenant to keep and maintain dam runs with the land); *Pittsburgh, Fort Wayne & Chicago R.R. Co.* (1886), 22 Ill. App. 470, *aff'd* (1887), 123 Ill. 273, 14 N.E. 195 (railroad's covenant to restore switch connection runs with the land).) Maintaining a watertight bridge undoubtedly affects the enjoyment of the land, and it directly concerns the land and the easement conveyed. It is not merely a personal covenant concerning something collateral to the land. See *Parrish v. City of Carbondale*, 61 Ill. App. 3d 500, 378 N.E.2d 243.

■ Similarly, in regard to the taxes, such a promise relates directly to the land itself and the use thereof. Payments made in connection with the use or ownership of land have been found to be covenants running with the land. See, *e.g., Streams Sports Club, Ltd. v. Richmond* (1983), 99 Ill. 2d 182, 457 N.E.2d 1226 (covenant to pay for recreational facilities at condominium is covenant running with the land); *Mathis v. Mathis* (1948), 402 Ill. 60, 83 N.E.2d 270 (covenant runs with land and is enforceable by heirs where conveyance of land made in consideration of covenant to support grantor or other persons).

Moreover, the 1908 contract states that the parties agreed it would be binding upon and inure to the benefits of the parties to the agreement and their respective successors and assigns.

■■ Summary judgment is proper when the pleadings, depositions and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) Where the material facts are undisputed and can lead but to one reasonable inference, the court may enter a summary judgment. (*Amsted Industries, Inc. v. Pollak Industries, Inc.* (1978), 65 Ill. App. 3d 545, 382 N.E.2d 393.) Summary judgment is appropriate where the questions involved concern the construction of contract language. *Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 33, 437 N.E.2d 22.

■■ Judge Murray properly entered partial summary judgment in favor of plaintiffs on the issue of whether the covenants regarding defendant's duties to maintain a watertight bridge and to pay taxes ran with the land.

Defendant makes various arguments regarding those covenants. For example, defendant argues the watertight bridge covenant is satisfied by the parties' course of conduct in using a catch-pan system over the years. In addition, defendant maintains that the tax covenant could not include payment of locally assessed property taxes because it was a contract *by* railroads and *for* railroads, and under the circumstances, the original parties never contemplated use of the property for nonrailroad purposes.

These arguments, however, go beyond the issues covered by the partial summary judgment order. The order was limited to the legal question of whether the covenants run with the land. Defendant's arguments focus on how the covenants should be interpreted, and these are questions of manifest weight. Because we reverse and remand for a new trial on the issues of liability and damages, we do not address contentions regarding the manifest weight of the evidence.

Defendant next contends that Judge Mackoff erred in construing the original partial summary judgment order as having determined all issues of liability. Defendant maintains that limiting the trial to the issues of damages resulted in stripping defendant of its affirmative defenses of waiver, *laches* and expiration of the statute of limitations. We agree.

We have thoroughly examined the lengthy record and have

found numerous examples indicating that the 1980 order was narrowly limited to the question of law concerning whether the 1908 covenants run with the land.

In 1980, Judge Murray ruled on the cross-motions for summary judgment as to whether the tax and watertight bridge covenants run with the land. During argument, defense counsel stated that "[W]e also have not forgone any of the other defenses that we would have if, in fact, the court does find that these are covenants assigned to the land or assignment or whatever." The judge responded, "I understand. *** And I'm not ruling on it. I'm only limiting my ruling to the issue as to whether *** or not the agreement of 1908 *** created covenants running with the land." Judge Murray described the cross-motions for judgment as creating "narrow issues."

The court then entered an order in favor of plaintiffs, finding that the covenants run with the land and thus that the benefits and obligations of those provisions pass with the ownership of the property. On January 14, 1981, Judge Murray amended the order by deleting the "final and appealable" language and adding: "This language is deleted because it is the court's opinion that said order dated December 19, 1980 is not final and appealable and that other issues have yet to be decided."

The record reveals several examples of Judge Mackoff's later interpretation of Judge Murray's order to mean that all questions of liability had been decided, and only questions of damages remained. Plaintiffs' counsel supported this interpretation.

At trial in 1985, defendant attempted to attack jurisdiction by arguing about a ruling of the Illinois Commerce Commission regarding the relationship of the parties as a result of the abandonment and sale of a railroad use. Plaintiffs' counsel stated: "As a matter of fact, I'm here to merely prove up damages. As far as I'm concerned the issues, responsibility of the railroad have been determined." The court agreed: "This comes somewhat late; particularly since the motion for summary judgment has resolved the issue of liability." It then denied defendant's request to raise the issue.

On March 11, 1987, Judge Mackoff addressed plaintiffs' motion to amend the complaint and add a count asserting punitive damages. Plaintiffs' counsel argued: "What defense, if any, can the defendant interpose on the issue of damages only, because the liability has already been established by summary judgment many years ago." The court denied the request to amend the complaint. Plaintiffs then rested their case, and defendant presented a motion for a

directed judgment. Defense counsel argued that plaintiffs had waived their contractual rights, when plaintiffs' counsel interjected:

"PLAINTIFFS' COUNSEL: I regret to interrupt, but that issue is not before this court. There is a summary judgment on the issue of liability.

THE COURT: Of liability.

PLAINTIFFS' COUNSEL: The only issue before this court is damages.

THE COURT: That was by Judge Murray.

DEFENSE COUNSEL: Your Honor, those defenses were raised as to the damages in question and I think also as to liability. And the determination that certain covenants run with the land did not necessarily mean that they are enforceable between the respective parties at a given particular time.

THE COURT: I will consider that Judge Murray, in ruling that liability was found for the plaintiff and against the defendant, included that aspect of abrogation of the contract, aspect which you are directing your argument to at this time.

My understanding is that liability has been found for the plaintiff and against the defendant, and the issue of damages which are direct and proximate from the breach are the issue[s] before the court.

PLAINTIFFS' COUNSEL: That was my understanding."

Defense counsel proceeded to argue that the 10-year statute of limitations had run. The court interrupted, stating that "[s]ince that isn't jurisdictional, *** those are matters which I will have to believe were determined by Judge Murray in his finding of liability."

On April 8, 1987, defendant filed a motion for clarification of Judge Murray's 1980 summary judgment ruling. The motion quoted the 1980 exchange between the court and counsel. Defendant argued to Judge Mackoff: "I think pretty clearly the court indicated that it was, by its ruling, not barring any defenses on behalf of the Chicago Northwestern and, your Honor, given some discussions on the record much more recently than that, I am concerned that we may not be able to present certain defenses."

Plaintiffs' counsel responded that the motion was not timely, and that if defendant "feels that there are errors made in Judge Murray's order, he will have a remedy, I believe, because the order was not made final and appealable, if and when [the] matter is concluded before your Honor to do whatever the law permits him to do." The judge stated that "it appears to me that the order of

Judge James C. Murray of December 19th, 1980 is clear on its face, and the motion for clarification is denied."

The record reveals that the court's error in limiting defendant's evidence to damages issues permeated the entire trial. It was serious error to construe the narrow parameters of Judge Murray's order so as to preclude defendant from offering evidence on its affirmative defenses as to liability.

For example, it is not enough to permit defendant to argue at trial, and before this court, that plaintiffs waived their claims for taxes and water damages because, by their conduct from 1959 until 1974, they failed to enforce their alleged right to the taxes and because they asked for and permitted defendant to fix the catch-pans as late as 1987. Defendant must be permitted to produce evidence that plaintiffs waived not just some portion of the damages, but any claim to liability on defendant's part.

■ Judge Murray only found, simply by construing the 1908 contract language, that a successor in interest to the Chicago & North Western Railway Company's obligations to maintain a watertight bridge and pay taxes would bear the same burdens as the predecessor in interest. But the precise burdens have not been determined. The gap between Judge Murray's partial summary judgment order, and Judge Mackoff's judgment for damages, reveals no evidence or finding as to the nature of those burdens. Defendant does not just bear the burdens of its predecessor's obligations under the two covenants. It also has the right to challenge any liability under those covenants in the face of the potentially successful assertion of any affirmative defenses, such as waiver (see *Lempera v. Karner* (1980), 79 Ill. App. 3d 221, 223, 398 N.E.2d 224), *laches* (see *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341), and the running of the 10-year statute of limitations (see Ill. Rev. Stat. 1987, ch. 110, par. 13—206).

Consequently, we reverse Judge Mackoff's judgment order awarding damages and remand for a new trial on the issues of liability and damages, thus permitting defendant to present its case with the inclusion of all applicable affirmative defenses. The new trial, of course, must proceed with the limitation that this court has affirmed Judge Murray's entry of partial summary judgment in favor of plaintiffs finding that the two covenants at issue run with the land.

In view of the fact that we are remanding for a new trial on liability and damages, we need not address defendant's remaining contentions that the trial court's award of damages was contrary to

law and against the manifest weight of the evidence.

We hold that the judgment of Judge Murray dated December 19, 1980, as modified by order dated January 14, 1981, entering partial summary judgment in favor of plaintiffs and against defendant, is affirmed. The judgment of Judge Mackoff dated July 6, 1988, finding in favor of plaintiffs and against defendant in the amount of $541,422.92, is reversed and remanded.

Accordingly, the judgments of the circuit court of Cook County are affirmed in part and reversed in part, and the cause is remanded for a new trial.

Affirmed in part; reversed in part and remanded with directions.

EGAN and RAKOWSKI,* JJ., concur.

---

*Justice William Quinlan participated in the above-entitled cause prior to his resignation. Justice Thomas Rakowski was designated the third member of the panel and has read the briefs and listened to the tapes of oral argument.