2024 IL App (1st) 220511-U

SECOND DIVISION
March 29, 2024

No. 1-22-0511

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER CASAS, individually and d/b/a KS&T, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14 CH 7682 |
| MARCO FERRARINI, MLL, LDT., an Illinois Corporation, and FERCAS, LLC, an Illinois limited liability company, | ) ) ) ) | Honorable Michael F. Otto, |
| Defendants-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1     *Held*: The judgment of the circuit court of Cook County is affirmed; the trial court did not err by conducting a trial only on the issue of damages after it vacated the damages portion of its default judgment; the trial court properly awarded damages individually against the owner of the corporate-member of an LLC; and the measure and amount of damages and punitive damages are not against the manifest weight of the evidence.

¶ 2     Plaintiff, Christopher Casas, filed a multicount complaint against defendants, Marco Ferrarini; MLL, Ltd., an Illinois corporation; and FerCas, LLC, an Illinois limited liability company, under several theories of recovery including breach of fiduciary duties, and to recover

for the conduct of defendants, Marco Ferrarini, MLL, Ltd., FerCas, LLC, in ousting plaintiff from FerCas. After an evidentiary hearing in which both parties participated, the trial court entered a judgment granting monetary damages and equitable relief in favor of plaintiff and against defendants. Subsequently, on defendants' motion, the court vacated the monetary damages portion of that judgment only. Trial then proceeded only on the issue of monetary damages. The trial court awarded plaintiff compensatory and punitive damages and defendants appealed.

¶ 3    For the following reasons, we affirm.

¶ 4                          BACKGROUND

¶ 5    In May 2014, plaintiff, Christopher Casas, both individually and doing business as KS&T, filed a multicount complaint against defendants. Plaintiff's complaint contained claims for a declaratory judgment (count I), a judicial supervision of the dissolution and windup of FerCas pursuant to 805 ILCS 180/35-4 (Count II); an accounting (count III); breach of contract (count IV); breach of fiduciary duty (count V); and unjust enrichment (count VI). Plaintiff's complaint was based on a business endeavor between the parties.

¶ 6    Casas and Ferrarini decided to go into business together. They decided to open a restaurant, a coffee shop, and a vintage motorcycle dealership. The parties decided to form a limited liability company (LLC) to operate their businesses and that each of them would form their own, separate entities to be members of the business LLC. The business LLC would be FerCas, LLC. Ferrarini's business entity, that would be a member of FerCas, was MLL. Casas would allegedly form KS&T, a limited liability company that would be a member of FerCas. Casas never incorporated KS&T.

¶ 7 FerCas opened a restaurant, a coffee shop, and a vintage motorcycle dealership. The parties signed various leases to open the businesses and were individually guarantors on some of them. MLL allegedly prepaid the entire rent for the lease term for two of the leases. Casas' contribution to FerCas would be equipment and expertise. Casas worked for FerCas in multiple capacities without a salary.

¶ 8 In April 2014 MLL notified KS&T it was disassociated as a member of FerCas because KS&T had never been legally formed as an Illinois LLC. "KS&T" was listed as a member of FerCas but, according to defendants, KS&T did not exist because it was not an incorporated Illinois LLC. In May 2014, Casas filed the original complaint as stated above. In June 2014 defendants filed a motion to dismiss the original complaint. MLL subsequently filed a counterclaim for trespass and later a motion for a temporary restraining order seeking to bar Casas from entering certain of the businesses based on alleged misconduct by Casas with respect to business property.

¶ 9 In June 2014 the trial court denied the motion for a temporary restraining order and struck the counterclaim for trespass. The matter proceeded with briefing on defendants' motion to dismiss. In December the trial court granted the motion to dismiss only as to count IV (breach of contract) of the original complaint and denied the motion to dismiss the other counts. The court granted plaintiff leave to file an amended complaint. On January 2, 2015, plaintiff filed his first amended complaint. Plaintiff's first amended complaint included counts for a declaratory judgment that, *inter alia*, Casas is a member of FerCas (count I); judicial supervision of the dissolution and wind up of FerCas pursuant to 805 ILCS 180/35-4 (count II); an accounting (count III); breach of contract against Ferrarini individually (count IV); breach of fiduciary duty (count V); and unjust enrichment (count VI).

¶ 10    On July 12, 2016, plaintiff filed a motion for summary judgment as to count IV of the complaint and defendants filed a motion for partial summary judgment on "the issue of [plaintiff's] rights as a member of FerCas, LLC ("FerCas")." The only issue raised in plaintiff's motion for summary judgment was Casas' membership in FerCas. The motion asked the trial court "to enter judgment that Plaintiff was a member and has the rights of a member of FerCas." Defendants' motion sought summary judgment on counts I and II of the complaint for a declaratory judgment that Casas is a lawful member of FerCas, LLC (count I) and for judicial supervision of the dissolution and wind up of FerCas pursuant to the Illinois Limited Liability Company Act (count II). However, defendants' motion only asks for relief in the form of a "summary judgment order finding that as a matter of law that (1) 'KS&T', a purported sole proprietorship, cannot be a 'member' of an Illinois limited liability company; (2) 'KS&T' did not exist as a sole proprietorship; and (3) Casas' claim of derivative membership and membership in FERCAS, LLC through the non-existent 'd/b/a' 'KS&T' should be denied as a matter of law."

¶ 11    The parties fully briefed the motions; and on December 20, 2016, the trial court entered an extensive written order granting plaintiff's motion for partial summary judgment and denying defendants' cross-motion for partial summary judgment. As it pertains to the specific issues on appeal, in the written order, the trial court found the parties' cross-motions for summary judgment were "both *** limited to the issue of Casas' status and rights as a member of FerCas."

¶ 12    In the trial court Casas stated that "he was referred to as KS&T in FerCas's Articles of Organization in case he eventually incorporated an entity by that name; however, Casas admits that no such entity existed at the time." Casas argued that if unincorporated, an entity is "merged into the individual doing business under the name, KS&T is the name he used when doing business such that "Casas is KS&T and KS&T is Casas;" therefore, he (Casas) is a member of

FerCas. Defendants argued, *inter alia*, that a sole proprietorship cannot be a member of a limited liability company under the Illinois Limited Liability Act (the "Act"), and "Casas' contention that KS&T is a sole proprietorship contradicts his admission in his Amended Complaint in which he states that he sometimes conducts business under his d/b/a name of KS&T. However, *** Casas has admitted that he did not do any business under KS&T." Defendants also argued that only "persons" may be members of limited liability companies," the Act's definition of a "person" does not include a sole proprietorship; therefore, "a sole proprietorship cannot be a person under the Act" or a member of an LLC.

¶ 13    The trial court first found that the parties did have an agreement as to the formation of FerCas and the "fact that Casas never incorporated KS&T has no bearing on whether a limited liability company was formed." The court concluded that "FerCas was formed with MLL and KS&T as members." Next, the trial court found that FerCas is a member-managed LLC with the members being MLL and KS&T. "Members in a member-managed [LLC] owe each other the fiduciary duties of loyalty and care." The trial court found that for KS&T to be a member of FerCas, "KS&T must either be an individual, or another 'judicial being,' *i.e.* a legally cognizable entity."

¶ 14    The trial court concluded that "there is no genuine issue of material fact that the reference to KS&T as a member of FerCas in FerCas's Articles of Organization was a reference to an entity wholly owned by Casas. The court found that KS&T is a sole proprietorship and as such is "merely a fictitious name under which Casas was to do business as a member of FerCas." The court found the fact that Casas had not used the name KS&T to transact any other business to be "wholly beside the point because there is no genuine issue of material fact that Casas used the

fictitious name of KS&T to do business as a member of FerCas." The court concluded that

KS&T is a member of FerCas.

¶ 15    The parties continued to litigate discovery issues and, on August 27, 2019, Casas filed a

petition for default judgment and appointment of a receiver. The grounds for the motion for

default judgment were that five years into the litigation the trial court granted defense counsel

leave to withdraw and ordered defendants to file supplemental appearances, none of the

defendants had filed a supplemental appearance, and the court ordered that  defendants' failure to

file an appearance would lead to an order of default.

¶ 16    The motion for default judgment noted that in the April 2014 letter allegedly

disassociating plaintiff from FerCas, Ferrarini "offered only one reason for freezing Plaintiff out:

that the d/b/a through which Plaintiff held his interest in FerCas and [its] companies was never

properly formed" and, therefore plaintiff "was not and had never been a member and held no

interest in the businesses." Plaintiff claimed that the trial court's December 20, 2016, summary

judgment ruling "resolved the key liability issue" and "effectively established Defendant's

liability" for the allegedly wrongful disassociation, "illegal and oppressive conduct, and breach

of fiduciary duty," because plaintiff's allegations of defendant's wrongful conduct "cannot be

disputed." Plaintiff argued that to the extent "any issue related to liability was not resolved by the

Court's December 20, 2016 [Order], this Court has the power to enter an order finding in

Plaintiff's favor on liability *** based on Defendant's failure to file an appearance as required by

this Court's *** Order."

¶ 17    On September 10, 2019, defendants filed appearances and moved the trial court to deem

the appearances as timely filed. On September 11, 2019, the trial court entered a written

judgment. The judgment states that after taking evidence and hearing testimony from Casas and

Ferrarini, the court granted plaintiff's petition for default judgment and appointment of receiver. "Judgment is entered in Plaintiff's favor and against Defendants on Counts I, II, III, V, and VI of Plaintiff's First Amended Complaint." The court ordered that the businesses were to be wound down, dissolved, and all of their assets distributed. The court appointed a receiver. The order continues, "Judgment is entered in Plaintiff's favor and against Defendant Ferrarini in the amount of $747,000 as compensatory damages." The court awarded punitive damages, prejudgment interest, and court costs.

¶ 18    Also on September 11, 2019, the trial court entered a written order specifically stating that "(1) the court construes this as a motion requesting leave to file an appearance (2) defendants' motion is granted. Counsel for Defendants are granted 7 days to appear. Defendants' motion is granted *subsequent to* the court's ruling granting plaintiff's verified petition for default judgment and appointment of [receiver.]" (Emphasis added.)

¶ 19    On September 18, 2019, defendants filed a "Motion to Vacate the Default Judgment, the $747,000.00 Money Judgment and Order Appointing Receiver All entered on September 11, 2019." The parties fully briefed the motion to vacate and the trial court conducted a hearing. On June 1, 2020, the trial court entered a written order granting defendants' motion to vacate the default judgment in part. The order granting the motion to vacate states, in pertinent part, that in addition to arguing that the default judgment should be vacated, "Defendants posit that even if the Court is not inclined to vacate the default judgment, the Defendants still have a right to be heard on the issue of damages, and therefore the $747,000 money judgment entered against them must be vacated." The trial court's judgment notes that defendants argued plaintiff's action was for an unliquidated claim, therefore "they have a right to be heard as to the issue of damages."

¶ 20    The order granting the motion to vacate states, in pertinent part, that the judgment was not actually a default judgment because defendants had an answer on file and the court entered the judgment after an evidentiary hearing. The court found that "substantial justice requires vacating the judgment." The court further found that "substantial justice requires this case to proceed to trial on the merits as to the issue of damages." The court also found it appropriate to allow plaintiff's counsel leave to file a petition for attorney fees incurred with the motion for default judgment. The order concludes: "For the foregoing reasons, the Court grants Defendant's motion to vacate the September 11, 2019, Order and said judgment is hereby vacated."

¶ 21    On January 7, 2021, the trial court transferred the matter for trial before a different trial judge. The transfer order states, "The court having concluded that all that remains for trial in this matter is the amount of damages ***." On July 19, 2021, the trial court issued an order setting the matter for "trial on damages." On September 29, 2021, plaintiff filed a motion *in limine* to bar liability evidence. Prior to the bench trial, the trial court conducted a hearing on plaintiff's motion *in limine* to bar liability evidence. Following arguments by the parties the trial court stated that "Liability has been determined by a summary judgment," and that it was "not going to hear evidence relating to liability."

¶ 22    On February 22, 2022, the trial court entered a final judgment in this case. The final judgment begins, "The above-captioned matter was transferred to the law division for a trial as to damages via Order of January 7, 2021, the court having concluded that all that remains for trial in this matter is the amount of damages and that non-monetary relief remains at issue." The trial court made extensive findings of fact and found that plaintiff had proven his damages. The court then stated its factual bases for its calculations of damages. The trial court awarded total

compensatory damages of $1,624,996.62, prejudgment interest, and punitive damages of double the compensatory damages. The court awarded damages jointly and severally against defendants.

¶ 23    Defendants filed a motion to reconsider and for a new trial. The motion argued, in pertinent part, that the trial court erred in limiting the trial to the issue of damages because the default judgment order had been vacated. On March 22, 2022, the trial court entered a written order denying defendants' motion to reconsider the orders of January 7, 2021, July 19, 2021, and February 22, 2022, and for a new trial. The court first found that defendants "waived this argument, or are estopped from raising it, due to their failure to do [so] in a timely manner." The court noted that the January 7, 2021, order transferring the case states "The court having concluded that all that remains for trial in this matter is the amount of damages ***" but defendants did not seek reconsideration (or appeal) of that order.

¶ 24    Similarly, the trial judge entered an order on July 19, 2021, stating the cause was before the court for the purpose of setting this matter for trial on damages but defendants never objected to this language nor sought reconsideration; and that defendants' pretrial memorandum stated that "The trial in this case is limited to damages." The trial court found the issue was waived because "for more than one year" the parties "proceeded pursuant to the understanding that the trial would be limited to the issue of damages." During that entire time, despite filing numerous motions defendants "never hinted to the court that they believed the trial should encompass liability as well as damages." The court found that defendants "deliberately refrained from disclosing their position prior to trial." The trial court also found that defendants waived reconsideration of the ruling on the motion *in limine* by failing to make an offer of proof at trial. As stated above, the trial court denied the motion to reconsider and for a new trial.

¶ 25    This appeal followed.

¶ 26                                                ANALYSIS

¶ 27    Broadly speaking, this is an appeal from a judgment following a bench trial. "Generally, the standard of review after a bench trial is whether the order or judgment is against the manifest weight of the evidence." *Total Staffing Solutions, Inc. v. Staffing, Inc.*, 2023 IL App (1st) 220533, ¶ 31. "A decision is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.* "When the issue is whether the circuit court applied the correct legal test to the evidence presented, then the issue is a question of law, which is reviewed *de novo.*" *Id.* As discrete issues arise, those issues may require a different level of deference to the trial court's judgment, which we will note accordingly.

¶ 28    TRIAL COURT DETERMINED LIABILITY AFTER AN EVIDENTIARY HEARING

LEAVING ONLY DAMAGES FOR TRIAL

¶ 29    Defendants' first, and primary, argument on appeal is that the trial court incorrectly believed that liability had already been determined by summary judgment, barred that question from trial, then erroneously awarded damages on plaintiff's claim for breach of fiduciary duties. "We review a trial court's decision to grant a motion for summary judgment *de novo.*" *Stonegate Insurance Co. v. Smith*, 2022 IL App (1st) 210931, ¶ 26. The interpretation of a trial judge's initial judgment that is later enforced or applied by a subsequent trial judge is reviewed *de novo.* See *Dowd v. Dowd*, 2016 IL App (3d) 140119-U, ¶¶ 24-25. We review the issue of whether the trial court erred in choosing to find an issue forfeited for an abuse of discretion. See *Kovera v. Envirite of Illinois, Inc.*, 2015 IL App (1st) 133049, ¶ 47 (and cases cited therein).

¶ 30     DEFENDANTS FORFEITED ARGUMENT LIABILITY WAS AN ISSUE FOR TRIAL

¶ 31    Defendants assert they "properly raised the argument at the commencement of the trial." Defendants argue they did not forfeit their argument the trial court did not enter judgement on the issue of liability because "[i]n a nonjury case *** a defendant is not required to specifically object to the entry of judgment or file a motion to reconsider." Defendants also argue that the trial court erred in excluding a presentation of defendants' affirmative defense of unclean hands. Defendants argue plaintiff failed to answer their affirmative defense and thereby admitted it. Defendants argue that had they been allowed to proceed on their affirmative defense, "they would have introduced evidence on why Casas should not be entitled to any damages." Defendants chronicle all the ways in which plaintiff allegedly had unclean hands in his dealing with FerCas that they could have established at trial had they been allowed to do so. Defendants repeat these assertions in reply and argue plaintiff "has not provided the Court with a compelling reason to excuse [plaintiff's] failure to reply to the Defendants' affirmative defense."

¶ 32    Defendants also reply their pretrial memorandum did not result in forfeiture of the issue and they were not required to object to the judgement setting the matter for a trial on damages prior to the commencement of trial because (1) this was a bench trial, citing *Trusler v. Sears, Roebuck & Co.*, 125 Ill. App. 3d 325, 329 (1984), and (2) the trial judge specifically ordered that failure to respond to the motions *in limine* would not preclude defendants from arguing against them. Nor were they required to make an offer of proof at trial that defendants were not liable to plaintiff for breach of fiduciary duties because plaintiff bore the burden of proof on that issue.

¶ 33    Plaintiff argues that defendants forfeited the issue of the exclusion of the presentation of the defense of unclear hands by failing to raise it in the trial court. Defendants did not challenge the trial court's judgment that liability was determined and the only issue left to be tried was damages "over the course of years." Furthermore, plaintiff argues he did not admit the defense of

unclean hands because courts "liberally construe the rule excusing the filing of a reply to an affirmative defense," citing *State Farm Mutual Automobile Insurance Co. v. Haskins*, 215 Ill. App. 3d 242, 246 (1991).

¶ 34    Plaintiff argues that when the trial court continued the trial date and set a briefing schedule on plaintiff's motion *in limine* to bar liability evidence, the court granted defendants 28 days to respond to the motion *in limine* but defendants never did until the first day of trial when they first took the position that the trial must encompass both liability and damages—and that position is contradicted by defendants' pretrial memorandum. Plaintiff also argues that challenges to motions *in limine* are waived absent an offer of proof and defendants made no offer of proof. Plaintiff argues that defendants' affirmative defense of unclean hands did not raise a new matter "and thus, no response [from plaintiff] was required," citing 735 ILCS 5/2-602.

¶ 35    Plaintiff argues the parties actively litigated this case for over a year with no indication from defendants that they believed the trial should encompass liability as well as damages. Plaintiff argues that defendants' acquiescence that the trial would only encompass damages estopps or waives defendants' argument the issue of liability should have been tried as well. Plaintiff argues that all of defendants' authorities are distinguishable. Thus, plaintiff argues defendants have forfeited this issue.

¶ 36    "A forfeiture is a failure to make a timely assertion of a right." *Davis v. City of Chicago*, 2014 IL App (1st) 122427, ¶ 75. "A party's failure to raise an issue in a timely manner may result in forfeiture." *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 15.

> "Waiver is the 'voluntary and intentional relinquishment of a known and existing right. [Citation.] It can be express or implied, but the implied waiver of a legal right will only be found "when [the] conduct of the person against whom

waiver is asserted is inconsistent with any other intention than to waive it."
[Citation.]' Whether a party's actions are sufficient to constitute waiver is a
question of law we review *de novo.*" *Matschke v. Uropartners, LLC*, 2023 IL App
(1st) 221112, ¶ 47.

¶ 37     "[T]he doctrine of waiver is intended to prevent unfair surprise to one's opponent when
the issue is raised for the first time on review." *Carmody v. Retirement Board of Fireman's
Annuity & Benefit Fund of Chicago*, 305 Ill. App. 3d 600, 604 (1999). "The purpose of the
waiver rule is to prevent surprise at trial for both the trial court and the defendants, who would be
'disadvantaged' if plaintiff were allowed 'to proceed to trial on different issues contained in
separate complaints.' [Citation.] " *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 330
(2007).

¶ 38     We find that on appeal defendants do not directly challenge the measure and amount of
damages. At this point defendants attack only the order limiting the trial to the issue of the
amount of damages and argue they should have been able to address their affirmative defense.
"A point raised in a brief but not supported by citation to relevant authority *** is *** forfeited."
*In re Estate of O'Gara*, 2022 IL App (1st) 210709, ¶ 49.

¶ 39     We find defendants forfeited the question of whether the September 11, 2019, and June 1,
2020, judgments resolved liability issues or whether liability remained a subject of the
subsequent trial of the matter. The parties in this case conducted multiple hearings after the trial
court entered the default and follow-up judgments. The parties proceeded as if liability was
decided. Defendants' September 29, 2021, PreTrial Memorandum begins, "The trial in this case
is limited to damages." In particular, defendants proceeded with that understanding by (1) not
objecting to the language in the judgments and (2) acquiescing to the implementation of

plaintiff's equitable damages by the receiver. The trial judge clearly awarded equitable relief on plaintiff's claims. Defendants never raised the issue of liability until the eve of trial. Defendants never indicated a contrary view of the judgments at issue until plaintiff's motion *in limine*. Defendants conduct begs the question whether they would have raised a concern had plaintiff not erred on the side of caution and filed the motion *in limine*.

¶ 40    We also find that even if plaintiff, by failing to answer defendants' affirmative defense, initially admitted that fiduciary duties owed him were not breached, under *Sobel v. Franks*, 261 Ill. App. 3d 670, 689 (1994), we cannot find that an "admission" of that type makes any difference. The *Sobel* court did note that "[t]he failure of a party to reply to new matters raised by way of affirmative defense or counter-complaint constitutes an admission to those allegations." *Sobel*, 261 Ill. App. 3d at 680. However, *Sobel* does not stand for the proposition that such an "admission" is conclusive when the issue is later determined substantively by the trier of fact—that is what occurred in *Sobel* and that is what occurred in this case. The *Sobel* court found that *the evidence* conclusively established that the defendant breached his fiduciary duty to the plaintiff. *Sobel*, 261 Ill. App 3d at 680. In this case, the trial court determined defendants' liability after a full hearing with both parties. The only reading possible under *Sobel* is that any claimed admission is superseded by the trial court's substantive judgment. See *id*.

¶ 41    Defendants' reliance on *Trusler* is also misplaced. In *Trusler*, the trial court granted summary judgment in favor of the defendant, the plaintiffs filed a motion pursuant to section 2-1401 of the Code of Civil Procedure to vacate the summary judgment based on newly discovered evidence, and the trial court vacated the summary judgment in favor of defendant and entered judgment in favor of the plaintiffs on the 2-1401 motion. *Trusler*, 125 Ill. App. 3d at 326. On appeal, one of the defendant's arguments was that the trial court "erred in entering judgment on

the section 2-1401 petition prior to allowing the defendant an opportunity to file an answer." *Id*. at 326-27. The plaintiffs responded the defendant had waived this right by not requesting leave to file an answer. *Id*. at 328.

¶ 42    This court found that the defendant had the option to file an answer as a matter of right that did not depend on the direction or consent of the trial court. *Id*. This court found that the defendant had done nothing to waive the right to file an answer. *Id*. However, the appellate court found the record rebutted the plaintiffs' contention of waiver. *Id*. The *Trusler* court found that the defendant did not have an opportunity to seek leave to file an answer where the trial court misconstrued the defendant's motion to dismiss the case "as some form of answer." *Id*. at 328-29. The defendant was not aware of the trial court's mistake until the trial court granted the plaintiffs' petition, which the appellate court construed "as an implicit denial of [the] defendant's motion to dismiss." *Id*. at 327-28. The *Trusler* court found that "although defendant did not specifically object to the entry of judgment nor file a motion for reconsideration, we know of no such requirement in a nonjury case." *Id*. at 329.

¶ 43    *Trusler* does not stand for the broad general proposition defendants claim it does. *Trusler* can only be read to hold the defendants in that case had not waived their right to file an answer under the particular facts and circumstances of that case. The court's statement that it knew of no requirement to object to the entry of judgment in a nonjury case was made in the context of a case in which there was no notice to the defendants that judgment could issue before the trial court entered judgment and the matter concluded. This case is distinguishable because defendants had ample opportunity to challenge the trial court's determination that defendants breached their fiduciary duties, which they failed to do by not challenging that judgment in a timely fashion and by acquiescing in the equitable relief on the judgment.

¶ 44 Furthermore, *Trusler* says nothing about forfeiture when there is knowledge that a judgment exists and acquiescing in the judgment by proceeding (after the ruling on the defendants' motion to vacate) in the case as if the judgment existed. The *Trusler* court did not take the affirmative position that an objection to a judgment is not required in a bench trial to preserve the issue for review, only stating it knew of no such rule without citing any authority.

¶ 45 As to defendants' argument defendants were not required to make an offer of proof on defendants' affirmative defenses at trial to preserve the issue for appeal because plaintiff bore the burden to prove a breach of a fiduciary duty at trial, we find that that argument necessarily assumes the order fixing liability was void, and that the question of liability remained open for trial. We find that premise is untrue. Furthermore, the court has held:

> "When the circuit court grants a motion *in limine*, the ruling is considered to be interlocutory and is open to reconsideration in the course of the trial. [Citation.] The court reserves the right to change its mind as the trial unfolds and as the context becomes clearer for the evidence in question. Therefore, on pain of forfeiting appellate review of the granting of a motion *in limine*, the proponent of the evidence must follow up by making an offer of proof in the trial itself. *Id.* Case law requires an offer of proof for two reasons: (1) the opposing counsel cannot make an informed objection, and the court cannot make an informed ruling, unless they have a clear idea what the proffered evidence is, and (2) the reviewing court needs a clear description of the proffered evidence to decide whether the circuit court's ruling in the trial was a prejudicial abuse of discretion." *County of Peoria v. Couture*, 2022 IL App (3d) 210091, ¶ 86.

¶ 46 Thus, an offer of proof was required.

¶ 47    Regardless, we find forfeiture, not based on the failure of an offer of proof, but based on the fact that defendants waited until plaintiff filed a motion *in limine* raising the issue to address it at all. The determinative facts regarding forfeiture in this case are that after the trial court ruled on the motion to reconsider defendants never challenged the trial court's judgement. The court determined that the issue of damages had already been determined by a prior judgment in the case. In ruling on the motion *in limine*, the trial court did not procedurally forfeit defendants' argument that liability issues remained for trial. The trial court heard defendants' argument and rejected it. The trial court granted plaintiff's motion *in limine* based on its interpretation of the prior judge's order—which we agree with.

¶ 48    In support of their argument that liability should have been an issue at trial, defendants also note that the opportunity to be heard on the issue of damages was "only one of the articulated reasons why the trial court vacated the September 11, 2019, default judgment," and liken this case to *C-B Realty & Trading Corp. v. Chicago & Northwestern Rail Co.*, 198 Ill. App. 3d 926 (1990), which held that a trial court erred in limiting the defendant's evidence to damages where the trial judge misconstrued the prior judge's order to preclude the defendant from presenting evidence on its affirmative defense. *Id*. at 935.

¶ 49    Plaintiff responds that *C-B Realty* is distinguishable because in that case, the trial judge had made it clear that there were substantive issues left to be determined. *Id*. at 933 (In response to defense counsel's statement "that 'we also have not foregone any of the other defenses that we would have if, in fact, the court does find these are covenants assigned to the land" the trial judge responded, "I understand. *** And I'm not ruling on it. I'm only limiting my ruling to the issue as to whether *** or not the agreement of 1908 *** created covenants running with the land."). Plaintiff argues the same cannot be said in this case, especially given that the language of the

order was clear that only damages were left to be determined, and a receiver began to implement the equitable relief plaintiff sought. We agree.

¶ 50    In *C-B Realty*, one of the issues was whether the trial court erred in limiting the evidence to issues of damages and prohibiting the defendant from addressing liability and introducing evidence of its affirmative defenses. *C-B Realty*, 198 Ill. App. 3d at 929. Before trial, the parties filed cross-motions for summary judgement on whether portions of a contract between the parties' predecessors in interest were covenants running with the land. *Id*. at 930. One trial judge entered an order finding the paragraphs were covenants running with the land. *Id*. In that case, the trial judge that made that ruling later modified the order "by finding it was not final and appealable because other issues had yet to be decided. *Id*. Later, at trial, a different trial judge "limited the issues to [the] plaintiffs' damages after finding that the *** entry of summary judgment determined all issues of liability." *Id*.

¶ 51    First, the *C-B* court found that the first trial judge properly found that the paragraphs were covenants running with the land. *Id*. at 932. However, the appellate court found that the second trial judge erred in construing the partial summary judgment as having determined all issues of liability. *Id*. There, like here, the defendant maintained that "limiting the trial to the issue of damages resulted in stripping [the] defendant of its affirmative defense." *Id*. The "stripping of [the] defendant of its affirmative defenses" was not the ground on which the appellate court rested its judgment. See *id*. at 932-33. Instead the appellate court in that case "thoroughly examined the lengthy record [and] found numerous examples indicating that the [summary judgment] order was narrowly limited to the question of law concerning whether the 1908 covenants run with the land." *Id*. at 933.

¶ 52    In that case, the trial judge that entered the summary judgment specifically stated it was not ruling on any of the other defenses that the defendant would have if the judge determined the covenants did run with the land. *Id.* The judge stated, "I'm only limiting my ruling to the issue as to whether *** or not the agreement of 1908 *** created covenants running with the land." (Internal quotation marks omitted.) *Id.* The summary judgment judge later revised the summary judgment order "by deleting the 'final and appealable' language and adding: 'This language is deleted because it is the court's opinion that said order dated December 19, 1980, is not final and appealable and that other issues have yet to be decided.' " *Id.* at 933. The appellate court found numerous examples of the second trial judge's interpretation of the prior judge's order "to mean that all questions of liability had been decided." *Id.* at 933.

¶ 53    Ultimately, the plaintiffs filed a motion to clarify the prior judge's summary judgment ruling. *Id.* at 934. The subsequent trial judge denied the motion for clarification finding that the summary judgment order was "clear on its face." The appellate court found the subsequent judge erred in limiting the defendant's evidence to damages because the second judge erroneously construed the "narrow parameters" of the prior judge's order. *Id.* at 935. The appellate court concluded the prior judge "only found *** that a successor in interest *** would bear the same burdens as the predecessor in interest" but the defendant had the right to challenge any liability under those covenants. *Id.* The appellate court reversed the second judge's judgment order awarding damages and remanded for a new trial on the issue of liability and damages. *Id.*

¶ 54    We agree defendants forfeited these issues for our review. Defendants moved to vacate the judgment imposing liability, lost, then did nothing until trial when they sought to relitigate the issue. *C-B Realty* is distinguishable and inapplicable to this appeal. From the outset in *C-B Realty*, the prior trial judge stated the narrow scope of his judgment. *Id.* at 933. In this case, the

trial judge that entered the "default" judgment did not state in a written order that issues other than liability had yet to be decided.

¶ 55    For the reasons discussed above, we find defendants forfeited the argument liability was an issue for trial in this case.

¶ 56               THE JUDGMENTS RESOLVED DEFENDANTS' LIABILITY

¶ 57    If we were to consider the question of whether, after the trial court's June 1, 2020, order, issues of liability were open for trial, we would find the question was conclusively resolved by the trial court's judgment order and its subsequent judgment order vacating only the damages portion of that judgment and that the court properly excluded that evidence from trial. Our review is whether the order or judgment is against the manifest weight of the evidence." *Staffing, Inc.*, 2023 IL App (1st) 220533, ¶ 31. "A trial court's decision to admit or exclude evidence usually involves a matter within the court's discretion and will be overturned only for an abuse of that discretion. [Citation.] But when that decision depends entirely on an interpretation of law, our review involves a question of law and the *de novo* standard applies." *Browning v. Advocate Health & Hospital Corp.*, 2023 IL App (1st) 221430, ¶ 48. "The intention of the court is determined by the order entered, and where the language of the order is clear and unambiguous, it is not subject to construction." *Won v. Grant Park 2, L.L.C.*, 2013 IL App (1st) 122523, ¶ 33. See also *Djikas v. Grafft*, 344 Ill. App. 3d 1, 10 (2003) ("the court in this case expressed no intention to retain jurisdiction over the cause of action. The court determined the rights of the parties on all issues raised in the pleadings. The hearing was not continued for consideration of additional issues, nor did the court overtly indicate any intent to retain jurisdiction").

"Where the language of the order appealed from is clear and

unambiguous, it generally is not subject to construction and cannot be controlled

by an alleged intent or purpose not expressed therein. [Citation.] However,

substance, not form, determines whether a matter has been adjudicated by the trial

court for purposes of determining whether an appeal is proper." *Cohen*, 338 Ill.

App. 3d at 176.

Accord, 27A Ill. Law and Prac. Motions and Orders § 12 ("Generally, the intention of a

court is determined only by the order entered, and where the language of such order is

clear and unambiguous, it is not subject to construction, nor can it be controlled by any

alleged intent or purpose not expressed therein. In other words, where the plain terms of a

court order unambiguously apply, they are entitled to their effect.").

¶ 58                          LIABILITY WAS NOT AN ISSUE FOR TRIAL

¶ 59    Defendants claim that the only "summary judgment order" was that "MLL and Casas,

doing business under the fictitious name of KS&T, were members of FerCas." Defendants argue

that order did not establish liability in any way; did not find that Ferrarini owed a fiduciary duty

to Casas; and did not find that Ferrarini breached any fiduciary duty to Casas or that any

damages were caused by such a breach. Defendants also complain they were barred from

introducing evidence to establish their affirmative defense of unclean hands. Defendants

acknowledge the default judgment of September 11, 2019, but argue that judgment was vacated

on June 1, 2020, and, regardless, the vacatur order did not state that only the damages portion

was vacated. Instead, defendants argue, the order vacating the default judgment vacated the

entirety of the default judgment order, the effect of which was to restore the parties to their

original status in the case as though the judgment had never been entered.

¶ 60    Plaintiff argues the motion for summary judgment "resolved the key liability issue:

whether Mr. Casas was a member of FerCas." Plaintiff argues that having established that fact,

defendants' liability for certain conduct is "undisputed." Plaintiff also argues that the trial court entered the default judgment after an evidentiary hearing at which both parties presented testimony. Consequently, the June 1, 2020, order vacating only the damages award "made it clear that the Judgment was not merely a procedural default."

¶ 61     Plaintiff notes that the trial court awarded damages and equitable relief in the form of the appointment of a receiver. Plaintiff notes the receiver proceeded to implement the equitable relief plaintiff sought without objection from defendants. Plaintiff argues the judgment partially vacating the "default" judgment clearly stated that "the Court finds that substantial justice requires this case to proceed to a trial on the merits as to the issue of damages."

¶ 62     Plaintiff also argues that defendants "would not have been able to meet the standard for proving their purported defense." Plaintiff notes that the allegations in defendants' appeal "amount to allegations that Mr. Casas concealed information from Defendants about his prior business ventures" but none of that alleged evidence "has anything to do with the damages Defendants owe to Mr. Casas." Plaintiff also argues the doctrine of unclean hands is inapplicable and in this case the allegations against plaintiff "have nothing to do with Mr. Casas' allegations of breach of fiduciary duty against Defendants" and "thus are not connected to the matter in litigation." Plaintiff argues that *Haskins* supports his position because it "held that the defendant in that case did not admit an affirmative defense by failing to respond to it in writing." *Haskins*, 215 Ill. App. 3d at 246.

¶ 63     On the merits of plaintiff's claim against defendants, plaintiff argues that partners and mangers of LLC's owe their partners and other members fiduciary duties and that shareholders of closely held corporations without a board of directors are deemed directors under the Business Corporation Act of 1983 (805 ILCS 5/1.01-17.05 (West 2020)) and are subject to all liabilities of

the directors. Plaintiff notes that shareholders of closely held corporations owe other partners and shareholders of the corporation fiduciary duties. Plaintiff then argues that Ferrarini owed a fiduciary duty to Casas "as a 50/50 partner and 50/50 owners of the business they formed." Alternatively plaintiff argues the trial court properly "pierced the corporate veil" because to allow Ferrarini to "hide behind MLL as a shield from legal action *** to obtain what [plaintiff] is rightfully owed would result in severe injustice." The trial court granted plaintiff's equitable relief and that judgment has not been vacated by the trial court.

¶ 64    In reply defendants argue the judgment finding liability was subsequently vacated and again assert that "[a]n order that is vacated has no effect—it is considered the same as a void order," citing *7-Eleven v. Dar*, 363 Ill. App. 3d 41, 45 (2005) (citing *Kelch v. Watson*, 237 Ill. App. 3d 875, 877 (1992)). Defendants maintain that the only reason the trial court entered judgment against them is their failure to file an appearance as ordered by the court. Defendants argue that the subsequent order finding that the default judgment was not a judgment of "default" but a judgment following an evidentiary hearing makes no difference because the prior order was vacated and of no effect. Defendants claim the judgment was "vacated in its entirety" such that "[n]o portion remained intact." Defendants note they did file a motion to vacate the entirety of the judgment but later withdrew their objection to the appointment of a receiver. In any event, defendants note the receivership had already concluded when the trial court vacated the judgment.

¶ 65    In support of their position, defendants argue that to vacate a judgment is to make it void, and cite *Schak v. Blom*, 334 Ill. App. 3d 129, 134 (2002), for the proposition that a void order is a complete nullity without legal effect. In pertinent part in *Blom*, the trial court granted a motion for the turnover of funds. *Id*. at 131. The trial court in *Blom* subsequently granted a motion to

quash the turnover order because the "defendant had no interest in the assets turned over *** and *** a turnover order should not have been entered." *Id*. Later, in a motion to clarify, the trial court stated that the turnover order was "void." *Id*. at 131-32. The court then ordered that a claimant was entitled to the return of the turned over funds. *Id*. at 132. The trial court also entered a separate subsequent order specifically stating that it has "the inherent authority to return these parties to their [prejudgment status before the court ordered the turnover."] *Id*. at 132.

¶ 66    On appeal, one issue was whether the trial court erred in entering judgment in favor of the claimant for the return of the funds. *Id*. at 132. The appellate court found the claimant was entitled to the return of the funds because the order which granted the motion for turnover was "void," which is what the trial court itself stated in response to the motion to clarify. *Id*. at 135. In what we surmise to be the order granting the return of funds and well as interest and attorney fees, the trial court specifically wrote that:

> "Plaintiff wrongfully obtained control of these funds by virtue of this
> court's order of May 27, 1998. *This court has inherent authority to return these*
> *parties to their pre-order status*. Since this status cannot be accomplished by
> *simply vacating* the May 27th order, the judgment that was apparently entered
> against the plaintiff on September 19, 2000, is the best mechanism to make the
> parties whole." (Emphasis added) *Id*. at 134.

¶ 67    The appellate court simply agreed with the trial court that its order was "void" and noted that such an order is "a complete nullity from its inception and has no legal effect and may be attacked, either directly or collaterally, at any time or in any court." *Id*. at 134. Accordingly, the claimant was in fact entitled "to recover the funds ordered turned over." *Id*. at 135. The *Blom*

court did not hold that a vacated judgment is void; the court held that a void order is of no legal effect. *Blom* actually supports plaintiff in this case because that trial judge recognized that "to return these parties to their pre-order status," which is what defendants erroneously claim occurred in this case, "cannot be accomplished by simply vacating the *** order." See *id.* at 134.

¶ 68    Moreover, the appellate court in *Blom* also stated that: "Courts have a duty to vacate and expunge void orders from court records and thus may *sua sponte* declare an order void." *Id.* The trial court in that case specifically held its prior order was "void" because simply vacating the order granting the turnover was not enough. On appeal, the *Blom* court stated trial courts have a duty to "vacate" an order that *is void*, not that vacating an order makes it "void." Thus, to return the parties to their pre-order status, trial courts should declare an order "void." See *id.*

¶ 69    We find that in this case, the trial judge merely vacated a portion of its order. Trial judges have the authority to vacate portions of a judgment while leaving other portions of the judgment intact. See *Thompson v. Glover*, 115 Ill. App. 2d 253, 260 (1969) (" '(W)hen a judgment or decree against two or more defendants is vacated as to one of them, it need not for that reason alone be vacated as to any of the others ***."); *Peoria, Decatur & Evansville Railway. Co. v. Duggan*, 32 Ill. App. 351, 353 (1890) ("Where a judgment is obtained by fraud, accident or mistake, without notice to the defendant, or if he has notice under such circumstances as would render it unreasonable to hold him bound by the notice, and where the judgment is itself unjust and inequitable in whole or in part, equity will grant necessary relief by enjoining *so much of the judgment as ought not to be collected*." (Emphasis added.)).

¶ 70    *Blom* is simply inapplicable in this case. We find the prior judge's order in this case *is* clear and unambiguous. The judgment order clearly entered judgment "in Plaintiff's favor and against Defendants on Counts I, II, III, V, and VI of Plaintiff's First Amended Complaint." The

court retained jurisdiction "for the purpose of overseeing the wind down and dissolution of FerCas." The judgment awarded compensatory and punitive damages. The order clearly determined that defendants were liable to plaintiff. Later, in the order vacating that judgment, the trial judge clearly stated, "substantial justice requires this case to proceed to trial on the merits as to the issue of damages." In that order, the trial judge noted defendants' argument that a default judgment was inappropriate because they had an answer on file and their insistence that "substantial justice requires that the Court vacate the default judgment and that this case be tried on the merits." Despite these arguments, the trial judge did not disturb his liability determinations. On the contrary, the trial court effectively reiterated its liability determination by pointing out in the vacatur order that the judgment order "was not a default judgment. [T]he Court entered judgment after an evidentiary hearing." In other words, the judgment the Court entered was not based on defendants' failure to file an answer.

¶ 71    We find that the trial court's intention is clear: liability was no longer an issue. The trial court found that "the judgment that was eventually entered is not an insignificant sum, although considerably less than what Plaintiff requested. Accordingly, the Court finds that substantial justice requires this case to proceed to trial on the merits as to the issue of damages." At no time did the first judge in *this* case state that it did not rule on issues of liability or affirmative defenses when it entered judgment in favor of plaintiff and against defendants or when it partially vacated that judgment. We find both the language and intent of the vacate judgment are clear that the trial was to be only on the issue of damages.

¶ 72    Similarly, *Dar* is inapplicable in this case. In *Dar*, this court quoted a dictionary definition of "vacate" when it wrote that "[t]o 'vacate' is defined as '[t]o nullify or cancel; make void; invalidate.' Black's Law Dictionary 1536 (7th ed. 1999)." *Dar*, 363 Ill. App. 3d at 45. The

26

court then found that the "substantive effect of [its] order vacating the entire arbitration award was to restore the parties to their original status in the case." *Id*. (citing *Kelch*, 237 Ill. App. 3d at 877). *Dar* is distinguishable in that in that case there appeared to be no dispute that the court vacated the entire arbitration award. See *id*. The appellate court "determined that the arbitrator had exceeded his authority by failing to determine all of the claims submitted to him, requiring once again that the *whole* award be vacated." (Emphasis added.) *Id*. at 43.

¶ 73    The circumstances in *Dar* were also different from this case in that in *Dar* the order at issue surpassed the arbitrator's authority. We acknowledge that "a court in entering a particular judgment may exceed its authority and thus render that judgment void." *Dils v. City of Chicago*, 62 Ill. App. 3d 474, 480 (1978). But that is not what happened here. Here, the trial court did not exceed its authority when it entered the judgment fixing liability. The *Dar* court's reliance on *Kelch* is also telling.

¶ 74    In *Kelch*, the trial court "inadvertently dismissed the *entire* cause of action" where the plaintiff's pleading sought to dismiss only one defendant. (Emphasis in original.) *Kelch*, 237 Ill. App. 3d at 876. The trial court granted the motion to vacate the inadvertent dismissal. *Id.* The plaintiff then moved to voluntarily dismiss the case and subsequently refiled the cause of action. *Id*. at 876-77. The defendants argued the plaintiff improperly refiled the complaint twice. *Id*. at 877. The trial court and the appellate court found there was no improper second refiling. *Id*. The trial court found that "the inadvertent 1987 dismissal 'became a nullity' upon its vacatur, so that the immediately reinstated cause of action was not a (first) refiling." *Id*. On appeal, the plaintiff argued that "the vacatur order merely *reinstated the inadvertently dismissed action*." (Emphasis added.) *Id*. The appellate court agreed, holding that "[t]he substantive effect of the order vacating

the allegedly inadvertent voluntary dismissal was to restore the parties to their original status in the case; the vacatur operated as if the voluntary dismissal had never been entered." *Id.* at 877.

¶ 75 We find that *Kelch* is also distinguishable because the "vacated" dismissal order had inadvertently dismissed "the entire action." See *id.* at 876-77. Thus, when the inadvertent order was vacated the trial court resurrected "the entire action." Once again, there was no indication the trial court ever intended, mistakenly or not, to vacate only a portion of its prior judgment, which the court acknowledged it had entered "inadvertently." Therefore, the *Kelch* court found that "the order vacating the inadvertent dismissal of plaintiff's complaint rendered the dismissal order nugatory and returned the parties to the status they held prior to entry of the dismissal order. *Id.* at 878. It is important to note that the appellate court looked to the "substantive effect" of the order vacating the allegedly inadvertent voluntary dismissal. *Id.* at 877. The *Kelch* court concluded, owing to either the inadvertent nature of the order at issue or the fact the order at issue went to the entire case, that the "substantive effect" of the trial court vacatur order was to put the parties in a position "as if the voluntary dismissal had never been entered." *Id.*

¶ 76 In this case, the "substantive effect" of the order at issue is unambiguously to conduct a trial solely on the issue of damages. If properly before this court, we would affirm the trial court's judgment limiting the issues for trial.

¶ 77 THE TRIAL COURT PROPERLY IMPOSED DAMAGES ON FERRARINI FOR BREACH OF FIDUCIARY DUTIES

¶ 78 Defendants argue the trial court's judgment against Ferrarini individually is erroneous because plaintiff never proved that Ferrarini individually owed plaintiff any fiduciary duties. Once again, the standard of review after a bench trial is whether the order or judgment is against the manifest weight of the evidence. *Staffing, Inc.*, 2023 IL App (1st) 220533, ¶ 31. Additionally,

"[a] reviewing court will not reverse the finding of the trial court regarding piercing the corporate veil unless it is against the manifest weight of the evidence." *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 500 (2005).

¶ 79     In opposition to the conclusion that the trial court properly imposed liability on Ferrarini for breach of fiduciary duties, defendants point out that members of an LLC do owe each other fiduciary duties; but "[i]f anyone owed a fiduciary duty to Casas, it was MLL, which was a member of FerCas" whereas Ferrarini was not a "member of FerCas." Defendants argue that despite the fact Ferrarini was the sole shareholder in MLL, that does not make Ferrarini individually a member of FerCas. Defendants argue that for Ferrarini, sole shareholder of MLL, a partner in the LLC, to be individually liable would require piercing the corporate form, which does not apply here because plaintiff did not make a successful claim against MLL then try to reach the individual shareholder, and nothing in the LLC Act indicates an intention to automatically reach shareholders of closely held corporations that are member-managers of an LLC.

¶ 80     Defendants argue the breach of fiduciary duties claim in count V is not directed to MLL or FerCas and there can be no judgment against either absent a pleading. Defendants argue that plaintiff never asserted a claim for breach of fiduciary duties against MLL or FerCas, therefore the trial court's judgment against them based on that claim is erroneous.

¶ 81     Plaintiff responds that at no time prior to this appeal did defendants ever raise the claim that Ferrarini was not a member of FerCas or that plaintiff did not plead its breach of fiduciary claim against MLL or FerCas and, therefore, the trial court erroneously awarded damages for that claim. The trial court entered judgment in favor of plaintiff and against defendants on count V of the complaint for breach of fiduciary duties "after live testimony of all parties," leaving

damages the only issue to be tried. Plaintiff notes that defendants "never objected to this order" and "they did not dispute this finding until the time they filed their appellate brief." Defendants reply to plaintiff's forfeiture argument by pointing out that although defects in pleadings not objected to in the trial court are waived (citing 735 ILCS 5/2-612(c)), in this case, there was nothing for FerCas or MLL to object to. (We note, however, that Ferrarini could have objected to the individual judgment against him, since he allegedly was not a member of FerCas and did not owe plaintiff a fiduciary duty.)

¶ 82    In reply, defendants argue "veil piercing" has no application in this case where plaintiff did not sue Ferrarini and did not sue MLL for breach of fiduciary duty then try to pierce the MLL corporate veil to reach Ferrarini. Defendants maintain that plaintiff never proved that Ferrarini, individually, owed plaintiff a fiduciary duty and that if anyone did, it was MLL, not Ferrarini. Defendant's assert that the trial judge's finding that "Casas and Ferrarini were 50/50 partners, 50/50 members of the LLC's and 50/50 owners of the business" is erroneous. Defendants' basis for that claim is the earlier finding that FerCas had two members: Casas doing business as KS&T and MLL," and the allegation that the fact Ferrarini was the sole member of MLL does not make him a member of FerCas. Defendants argue there is nothing in the LLC Act, and it was not the intent of the legislature to permit the court to find that Ferrarini was a "member" of FerCas. Defendants argue plaintiff failed to prove any of the facts courts consider when deciding to pierce the corporate veil. Defendants dispute plaintiff's reliance on the Closely Held Corporations Act because FerCas (not MLL) is not a closely held corporation.

¶ 83    Plaintiff places his heaviest reliance on this court's decision in *Buckley v. Abuzir*, 2014 IL App (1st) 130469. In that case, much (but not exactly) like this one, the plaintiff sought "to pierce the corporate veil *** and collect a judgment directly from [the] defendant." *Abuzir*, 2014

IL App (1st) 130469, ¶ 1. There, much like here, the defendant "counter[ed] that Illinois courts only pierce the corporate veil to impose liability on a corporation's shareholders, officers, directors, or employees, and he was none of those." *Id*. ¶ 8. There, much like here, the defendant in *Abuzir* argued that he was not a party to the underlying action and was deprived of the ability to defend himself. *Id*. ¶ 9. In holding the defendant liable, the court held that "Illinois courts will pierce the corporate veil where: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances." *Id*. ¶ 13 (citing *Tower Investors, LLC v, 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1033–34 (2007)).

¶ 84     We recognize Ferrarini's argument is not that he did not serve one of those roles (shareholders, officers, directors, or employees), but that this is not a typical "piercing the corporate veil" case. Defendants' position is that nothing made Ferrarini a member of an LLC where his corporation was the member of the LLC. Nonetheless, we find that the principles announced in *Abuzir* are equally applicable to this case. We also recognize that the trial court's judgments in this case do not expressly mention piercing the corporate veil; but that is of no moment in this case because "we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." *Department of Healthcare & Family Services ex rel. Hodges v. Delaney*, 2021 IL App (1st) 201186, ¶ 28.

¶ 85     We reject defendants' argument plaintiff did not plead breach of fiduciary duty against a proper party. "[O]ur supreme court has emphasized that 'the character of the pleading should be determined from its content, not its label. [Citations.] Thus, the title of the count does not control over the substance of its claim." *Tzakis v. Berger Excavating Contractors, Inc.*, 2019 IL App

31

(1st) 170859, ¶ 59. Count V of plaintiff's complaint is for breach of fiduciary duty. That count alleges that Casas and MLL are the only members of FerCas. The complaint alleges that MLL is owned exclusively by Ferrarini and that "MLL, Ltd. is a mere façade for Ferrarini's personal operation, and MLL, Ltd. is nothing more than Ferrarini's alter ego." The complaint also alleges that, "As the only two members of FerCas, Casas and Ferrarini owed each other fiduciary duties of good faith and fair dealing." The complaint lists several alleged breaches of fiduciary duties by Ferrarini, not MLL, including, "Selfishly kept for himself all FerCas profits and shared none with Casas; removed Casas as a signatory to the FerCas bank accounts to keep from for his own use; [and] used FerCas and its operating subsidiaries and series companies to pay his own personal expenses."

¶ 86     We find that the count effectively pleads a claim to pierce the MLL corporate veil and to recover damages for breach of fiduciary duties. Moreover,

> "It is established that all defects in pleadings, either in form or substance, not objected to in the trial court are waived. 735 ILCS 5/2–612(c) (West 2004). Thus, where a defendant files an answer to a complaint, any defect in the pleading is waived. [Citations.]
>
> If a complaint states a cause of action, no matter how defectively or imperfectly alleged, and is not challenged in the trial court, then such defectively stated cause of action is cured by judgment or verdict and cannot be attacked on appeal. [Citations.]" *Fox v. Heimann*, 375 Ill. App. 3d 35, 41 (2007).

¶ 87     We find, based on the allegations in the First Amended Complaint, that the trial court could properly impose damages for breach of fiduciary duties against Ferrarini.

¶ 88    We also find that the trial court's judgment imposing liability on Ferrarini is not against the manifest weight of the evidence. The trial court made several findings of fact in its February 22, 2022, "Final Judgment" that we find persuasive in applying these legal principles to this case. In the Final Judgment the trial court found that plaintiff and Ferrarini "entered into a partnership *** under which they agreed to establish and operate several businesses." They formed an LLC through which they would conduct the partnership business. "Casas and Ferrarini were 50/50 partners, 50/50 members of the LLCs and 50/50 owners of the business. Ferrarini held his interest in the LLCs through MLL and exercised full control over MLL. According to the testimony, MLL had no business operations other than in connection with the business formed by Casas and Ferrarini."

¶ 89    The trial court found that "On April 23, 2014, Ferrarini unilaterally dissociated Casas from FerCas LLC and all of the Businesses and ousted him from any involvement in the partnership. Ferrarini changed the locks, took Casas off the bank accounts, and sent KS&T a letter giving notice that KS&T was dissociated as a member of FerCas." The court found that from that date until the business was sold in October 2019, Ferrarini and MLL had "sole control over the operations and finances of the Businesses and access to all of their revenue. The trial court noted that plaintiff's theory of the case was that Ferrarini misappropriated hundreds of thousands of dollars in revenue from the businesses.

¶ 90    We note the trial court found plaintiff proved his damages after a full hearing on the matter (not by default). The court found that plaintiff testified "extensively, and credibly regarding the finances of the Business" and that Ferrarini's case "was unconvincing." The damages included missing cash, missing cash from parties held at one of the businesses, and money withdrawn from the FerCas bank accounts through the use of "counter checks." The trial

court also imposed punitive damages based on its finding that Ferrarini's conduct was "willful and outrageous." The court found that Ferrarini ejected plaintiff from the businesses in "total disregard of his rights and their fiduciary duties," then used the Businesses as a piggy bank for years, failing to deposit cash receipts, failing to deposit or account at all for cash received from student parties, and withdrawing thousands of additional dollars per month through counter checks. The court found it was a "flagrant breach of duty" to eject plaintiff from the business entirely.

¶ 91    Defendants do not refute the trial court's conclusions on these factual matters opting instead to argue they were not subject to attack by them at all. We find the trial court properly imposed liability, in part, because piercing the corporate veil "is not a cause of action but, rather, a means of imposing liability in an underlying cause of action" (*Abuzir*, 2014 IL App (1st) 130469, ¶ 9); and the question before this court is whether the trial court properly imposed liability on Ferrarini in plaintiff's cause of action for breach of fiduciary duties. Moreover, the *Abuzir* court noted that veil-piercing "occurs almost exclusively in closely held corporations, especially one-person corporations, such as the one here." *Id*. ¶ 10. "Courts may pierce the corporate veil, however, where the corporation is so organized and controlled by another entity that maintaining the fiction of separate identities would sanction a fraud or promote injustice." *Id*. ¶ 12. Illinois will use this as a means to impose liability,

> " 'where: (1) there is such a unity of interest and ownership that the separate
> personalities of the corporation and the parties who compose it no longer exist,
> and (2) circumstances are such that adherence to the fiction of a separate
> corporation would promote injustice or inequitable circumstances.' [Citation.]"
> *Id*. ¶ 13.

Therefore, even though this is not the prototypical case, we find the "piercing the corporate veil" analysis appropriate.

¶ 92    Courts use a non-exhaustive list of factors to determine whether there is a unity of interest and ownership. Applicable in this case are diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors, "failure to maintain arm's-length relationships among related entities," and "whether, in fact, the corporation is a mere façade for the operation of the [sole] stockholder." (Internal quotation marks and citations omitted.) *Id.* ¶ 15. The question in *Abuzir* was "whether the veil may be pierced to reach nonshareholders." *Id.* ¶ 17. Although Ferrarini *is* the sole shareholder in MLL, we believe the answer to that question in *Abuzir* is relevant to and instructive of the answer to the question of whether Ferrarini could have liability imposed on him.

¶ 93    The *Abuzir* court answered the question in the affirmative (*id.* ¶ 29), and so do we. Courts abandon formalism with regard to titles "in favor of an equitable approach focusing on the individual's domination of the corporation." *Id.* ¶ 17. Utilizing that principle here, it is easy to conclude that Ferrarini, personally, is responsible for MLL's breach of fiduciary duties to plaintiff. See *id.* ¶ 30 (citing *Fontana*, 362 Ill. App. 3d at 500-03 ("its decision rested on the equitable nature of veil-piercing, specifically, whether a person exercises equitable ownership and control over a corporation, such that separate personalities no longer exist." (Internal quotation marks omitted.))). We, like the *Abuzir* court, find persuasive to our decision that liability is properly imposed in this case, the following commentary:

> "The very point of veil-piercing is to avoid injustice by disregarding the
> formal structure of a transaction or relationship in favor of its substance—to
> impose personal liability on persons who have, in substance, run their nominally

incorporated business in a way that makes it unfair to allow them to deny their responsibility for the obligations of the business by interposing the corporation's separate legal personality." *Id.* ¶ 31 (quoting Glenn G. Morris, Agency, Partnership and Corporations, 52 La. L.Rev. 493, 508 (1992)).

¶ 94    Once again, based on the trial court's findings of fact, which are not against the manifest weight of the evidence and stand unchallenged, we find a unity between MLL the corporation and Ferrarini the individual. We also base our finding on the trial court's findings that fiduciary duties to plaintiff were breached. The question becomes "whether the circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances. *** Specifically, we must ask whether there is some unfairness, such as fraud or deception, or the existence of a compelling public interest that justifies piercing" *Id*. ¶ 34. In this case, we easily find that it would. In short, the trial court found serious misconduct by Ferrarini, we must accept those findings, and we may not condone allowing him to escape liability for them by hiding behind a sham corporation. See *id*. ¶ 40.

¶ 95                THE EVIDENCE SUPPORTS THE AWARD OF DAMAGES

¶ 96    Next, defendants argue that the trial court's damages award was against the manifest weight of the evidence.

> "Where a trial court makes an award of damages following a bench trial, the standard of review is whether the trial court's judgment is against the manifest weight of the evidence. [Citation.] A judgment is against the manifest weight of the evidence only if the opposite conclusion is clear or where the trial court's findings appear to be unreasonable, arbitrary, or not based on evidence. *Id.* A reviewing court will not overturn an award of damages unless it finds that the trial

judge either ignored the evidence or that its measure of damages was erroneous as a matter of law." *2460-68 Clark, LLC v. Chopo Chicken, LLC*, 2022 IL App (1st) 210119, ¶ 28.

¶ 97    Defendants argue that plaintiff's damages calculations failed to include the expenses of the business. On appeal, defendants argue the trial court was wrong because defendants submitted their income tax returns. Defendants claim expenses, particularly those of the restaurant FerCas opened, were "detailed, tracked and accounted for in MLL's income tax returns." Defendants argue plaintiff failed to call an expert to quantify damages and failed to reconcile the "transactions, documents, loans, and payments to quantify his damages." *Tufo*, 2021 IL App (1st) 192521, ¶ 86, Defendants argue the damages bore no reasonable relationship to plaintiff's loss.

¶ 98    Plaintiff responds defendants fail to demonstrate the award of damages is against the manifest weight of the evidence. Plaintiff argues that the "business expense information was exclusively within Mr. Ferrarini's possession and that [he] failed to produce such evidence in contravention of several discovery orders." Plaintiff argues that defendants alleged authorities that tax returns could have provided the expense information are distinguishable because in those cases the tax returns and business expenses were supported by other testimony, which is lacking in this case. See *R.J. Management*, 346 Ill. App. 3d at 970 (tax returns supported by expert witness and practice of business executives to review tax returns); *Tufo*, 2021 IL App (1st) 192521, ¶ 87 (tax returns supported by "check registers, QuickBooks files, *** among other documents"). Plaintiff argues the trial court's award of damages is well supported by the evidence, including bank statements, information from the point of sale system, and his own

testimony, which defendants failed to contradict. Plaintiff argues this is true despite defendants' denial of access to records or to comply with discovery orders to produce evidence.

¶ 99    Defendants argue this case is like the case in *Tufo*. We disagree. In *Tufo*, the trial court addressed the failure to present evidence of damages during the trial. *Id.* ¶ 87. "Prior to suspending the trial, the trial court addressed the parties, stating that plaintiff needed to provide evidence showing how much defendant's actions had damaged Discount Fence." *Id.* The plaintiff "failed to remedy this issue once trial resumed." *Id.* An  important distinction between these two cases is that in *Tufo*, "despite [the] defendant's unwillingness to comply with discovery orders throughout the litigation, [the] defendant eventually did produce the requested financial documentation, including the uncondensed QuickBooks file, tax returns, check registers and other documents." *Id.* ¶ 86.

¶ 100   The appellate court found that the plaintiff failed to "reconcile all of these transactions, documents, loans, and payments and to quantify his damages using additional evidence." *Id.* ¶ 86. In *Tufo*, the plaintiff had access to "all of [the defendant's] financial records" and yet was "unable to identify any lost profit or other damages stemming from [the] defendant's breach of fiduciary duty." *Id.* ¶ 87. This case is completely different. First, no such warnings that plaintiff needed specific evidence occurred in this case; second, the trial court explained how plaintiff in this case did reconcile the data he had; and third, quite to the contrary of *Tufo*, plaintiff here was denied access to all of defendants' financial records but regardless the trial court in this case seemed impressed by plaintiff's utilization of what discovery he had and his conservative estimates based on that hard data to fill in the blanks.

¶ 101   The trial court took the fact that some of plaintiff's damages calculations did not include expenses into consideration in making its damages award. The court chided defendants for their

failure to produce that information during discovery. Regardless, the court found that plaintiff used information obtained from the businesses point of sale system and information from FerCas bank accounts. Defendants never provided the requested access to that system so plaintiff had to use some estimates. The court found the calculations based on hard data were credible and unrebutted and that plaintiff arrived at the estimates using "a reasonable means to calculate damages." The trial court stated what evidence plaintiff used and explained how plaintiff arrived at his calculations for missing "party cash." Plaintiff had some bank statements to calculate how much Ferrarini withdrew through "counter checks" and used some estimates. The court also found that plaintiff was able to explain any discrepancies in his numbers that defendants questioned him about at trial.

¶ 102   It is impossible to find that the trial court's damages award is not based on the evidence, arbitrary, or unreasonable. Defendants have not demonstrated to this court that an opposite conclusion to that reached by the trial court is apparent. The trial court's judgment awarding damages is clearly based on the evidence presented at trial and the trial court was fully apprised and considered what evidence was missing. The trial court simply failed to lay the burden of the missing evidence at plaintiff's feet since the evidence he needed was in defendants' sole control. Defendants' argument the damages award was erroneous must fail.

¶ 103   Defendants also argue that punitive damages were not warranted because plaintiff never proved his underlying breach of fiduciary duty claim against Ferrarini individually because "liability was never determined by way of summary judgment as the trial court incorrectly believed." Similarly, defendants argue, plaintiff never pled a cause of action for breach of fiduciary duty against MLL or FerCas, therefore the punitive damages award against MLL and FerCas must also be vacated.

"We review the court's determination that punitive damages should be awarded under the abuse of discretion standard. [Citation.] 'An abuse of discretion occurs where no reasonable person would agree with the position adopted by the trial court.' [Citation.]" *Tully*, 409 Ill. App. 3d at 672.

¶ 104  Plaintiff responds the trial court properly awarded punitive damages because Ferrarini "willfully and intentionally" breached his fiduciary duties to plaintiff. Plaintiff argues Ferrarini's "intentional breaches of fiduciary duty support the imposition of punitive damages." Plaintiff argues defendants forfeited their argument plaintiff is not entitled to punitive damages because he did not specifically name MLL and FerCas in count V for breach of fiduciary duty. Plaintiff also argues that defendants failed to demonstrate the award itself was an abuse of discretion or was excessive or the result of passion, partiality, or corruption. See *Tully*, 409 Ill. App. 3d at 672 We review the court's determination that punitive damages should be awarded under the abuse of discretion standard. *Gambino,* 398 Ill. App. 3d at 69. "An abuse of discretion occurs where no reasonable person would agree with the position adopted by the trial court." *Schwartz,* 177 Ill. 2d at 176.

¶ 105  Once again, when the trial court granted punitive damages, it explained its basis for doing so as stated above. Defendants have failed to demonstrate that the trial court's decision to award punitive damages was the result of the court's bias or prejudice or that its calculation of the amount of damages was excessive or the result of passion, partiality, or corruption. See *Tully*, 409 Ill. App. 3d at 672-73. The trial court found that defendants' conduct was "willful and outrageous" and that defendants totally disregarded plaintiff's rights, to use their businesses as defendants' "piggy bank." The trial court in this case found that defendants cleared the "outrageousness bar" by a "wide margin." The punitive damages in this case properly reflect the

trial court's "determination as to the degree of maliciousness evidenced by defendants' actions." *Id.* at 673.

¶ 106    Defendants argue a new trial is warranted because the cumulative errors in the trial court "resulted in substantial prejudice *** and deprived them of a fair trial." Plaintiff responds no new trial is warranted where defendants "do not demonstrate any error." Plaintiff argues that defendants failed to meet their burden to demonstrate the denial of the motion for a new trial was an abuse of discretion. Having found no error, defendants' argument must fail.

¶ 107                                CONCLUSION

¶ 108    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 109    Affirmed.